United States District Court
Middle District of Florida
Jacksonville Division

**HEATHER VALENTINE,**

    *Plaintiff,*

v.                                                       No. 3:16-CV-414-J-32PDB

**PHYSICIANS GROUP SERVICES, P.A.,**

    *Defendant.*

## Report and Recommendation

Before the Court in this putative opt-in collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, is the parties' motion for approval of their settlement under *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), and for dismissal with prejudice, Doc. 28 (motion), Doc. 30 (supplement).

## Background

The plaintiff, Heather Valentine, worked for the defendant, Physicians Group Services, P.A., as a health information coordinator from January 2012 to November 2015. Doc. 1 ¶¶ 2, 8; Doc. 28 at 2. She filed the complaint as a putative collective action on April 6, 2016, asserting a single cause of action for unpaid overtime wages under the FLSA. Doc. 1. No one consented to join the action.

According to Valentine, she "routinely" worked more than 40 hours a week and estimates she worked on average 5 to 10—and as many as 30—overtime hours a week without payment of overtime wages or wages for preparation time. Doc. 1 ¶¶ 9–15,

28–29; Doc. 28 at 2. She estimates her unpaid overtime wages are $30,000 and claims entitlement to an equal amount in liquidated damages.[1] Doc. 28 at 2.

Physicians Group Services filed an answer in which it denies liability and asserts 16 defenses, including Valentine was exempt from overtime requirements and it had acted in good faith. Doc. 6. A verified summary of wages and hours shows Valentine was a salaried employee typically receiving total gross wages of $1653.85 to $1720 every two weeks with no overtime work or pay. Doc. 10-1. The summary does not list regular hours worked. Doc. 10-1.

In July 2016, counsel met in person for a settlement conference but did not settle. Doc. 11.

The parties exchanged written discovery and took depositions. Doc. 28 at 3. The parties called the Court during one of the depositions about an issue (the number of non-lawyer representatives for Physicians Group Services who could attend Valentine's deposition), and the Court ruled on the issue. Doc. 15.

In December 2016, Physicians Group Services filed a motion to compel Valentine to produce calendars and coordinate with its counsel to schedule her continued deposition. Doc. 16. Physicians Group Services requested an award of expenses incurred in bringing the motion. Doc. 16 at 1, 5. Valentine did not respond, and, in January 2017, the Court granted it and directed her to show cause why the Court should not order her or her counsel to pay Physicians Group Services' reasonable expenses incurred in bringing the motion. Doc. 17. She responded to the order, Doc. 18, and, in February 2017, Physicians Group Services filed a reply and

---

[1]Valentine filed a document titled "Plaintiff's Notice of Filing Answers to Court's Interrogatories." Doc. 9. The document does not contain answers; page numbers at the bottom suggest the filing was meant to be five pages, but she filed only the first two. *See generally* Doc. 9.

affidavit detailing expenses it had incurred in connection with the motion, Docs. 23, 25.

In March 2017, before Valentine moved for conditional certification of a collective action and before the Court resolved the issue of Physicians Group Services' entitlement to expenses related to the motion to compel, the parties notified the Court they had settled. Doc. 26. Citing *Lynn's Food*, the Court directed them to file the terms of the settlement for a reasonableness determination. Doc. 27. The current motion followed. Doc. 28.

In the motion, the parties explain they agree to the amount due Valentine. Doc. 28 at 3, 12. Valentine "believes that her claim has merit" but recognizes "the expense and duration of continued litigation necessary to prosecute her claim … through decision at summary judgment, trial[,] and appeals (if any)." Doc. 28 at 2. She also has considered "the uncertain outcome and risk of any litigation, as well as the difficulties and delays inherent in all litigation," and has determined the settlement is in her best interest. Doc. 28 at 2. Her counsel believes the settlement is fair and reasonable. Doc. 28 at 7. Physicians Group Services believes "it properly classified [Valentine] as an [e]xempt [a]dministrative or [e]xecutive [e]mployee" not entitled to overtime and disputes the number of overtime hours she claims but has decided further litigation "would be protracted, distracting[,] and expensive." Doc. 28 at 2. The parties identify four genuine disputes: whether Valentine was properly classified as an exempt employee; whether the two- or three-year statute of limitations applies; whether Physicians Group Services acted in good faith such that liquidated damages are unavailable; and whether Valentine worked more than 40 hours in any workweek and, if so, how many hours. Doc. 28 at 3.

The parties observe they are represented by counsel with "extensive experience" in litigating FLSA actions who "vigorously represent[ed] their clients' rights." Doc. 28 at 6. They assert settlement was negotiated at arm's length, free from fraud or collusion, and after the parties "engaged in a comprehensive analysis of

[Valentine]'s job duties and the records exchanged by the parties." Doc. 28 at 6–7. They assert the complexity, expense, and duration of litigation support approving the settlement because they otherwise "would be forced to engage in costly and protracted discovery and litigation." Doc. 28 at 8. They observe they settled after "nearly eleven months of investigation and discovery" and "had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion." Doc. 28 at 8–9. They assert that, based on the disputed issues, Valentine "would face significant obstacles and risk an unsuccessful outcome" if she proceeded to trial. Doc. 28 at 9. They state she could recover nothing if unsuccessful and $30,000 if fully successful. Doc. 28 at 9. They state the parties do not dispute she would have been ineligible for overtime pay for a "substantial portion" of the weeks she worked based on the number of hours she worked, vacation time, sick days, and holidays. Doc. 28 at 10 n.1.

The parties represent they negotiated attorney's fees and costs separately from the amount to Valentine and agree on the amounts. Doc. 28 at 10. They "stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances." Doc. 28 at 10. They state Valentine's counsel spent 62 hours on the case but they agreed to compensate her for 9.878 hours. Doc. 28 at 11.

With the motion, the parties filed a settlement agreement. Doc. 28-1. In the agreement, Physicians Group Services agrees to pay Valentine $9750 as follows: $5773 to Valentine "as back wages minus appropriate tax deductions and withholdings" and $3977 to her counsel. Doc. 28-1 ¶ 2. It includes a confidentiality provision. Doc. 28-1 ¶ 9.

The Court directed the parties to provide supplemental briefing on "(1) whether the … settlement resolves the dispute over the defendant's entitlement to reasonable expenses incurred in bringing the motion to compel and (2) why the confidentiality provision does not render the settlement agreement unfair." Doc. 29. The parties filed a supplemental memorandum and amended "Confidential

4

Settlement Agreement and Full and Final Release of Claims." Docs. 30, 30-1. On the first issue, they state that the defendant "has agreed to waive its entitlement to reasonable expenses incurred in bringing the motion to compel" in light of the settlement. Doc. 30 ¶ 3. On the second issue, they state that, following the order, they negotiated a revised settlement agreement under which Physicians Group Services would pay the same amounts to Valentine and her counsel, but $500 of the money to Valentine would constitute separate consideration for "the promises contained in paragraph 9 of the Agreement." Doc. 30 ¶¶ 4–6. They contend the separate consideration in exchange for the confidentiality provision renders the agreement fair and reasonable. Doc. 30 at 3–4.

Under the amended agreement, Physicians Group Services agrees to pay Valentine $9750 as follows: $5273 to Valentine "as back wages minus appropriate tax deductions and withholdings," $500 to her "in consideration for the promises contained in paragraph 9 of this Agreement minus appropriate tax deductions and withholdings," and $3977 to her counsel. Doc. 30-1 ¶ 2. In exchange, she agrees to release Physicians Group Services and all affiliated persons and companies from liability for all claims based on "any allegation of unpaid wages or other violation of the FLSA or comparable state law" arising out of her employment. Doc. 30-1 ¶ 5. The release expressly excludes her "currently pending EEOC Charge, Charge No.: 510-2016-03106," and any other claims that cannot be waived by law. Doc. 30-1 ¶ 6. She "agrees that she has been paid for all hours worked and overtime and minimum wage compensation." Doc. 30-1 ¶ 7. Physicians Group Services continues to deny liability. Doc. 30-1 ¶ 8. On confidentiality, the amended agreement states:

> [O]ther than the disclosure to this Court [for] the purposes of approving this settlement, the parties agree that the details of the litigation and the terms and conditions including the total amount of this settlement shall be kept confidential and shall not be disclosed to any third party at any time, except to any parties' attorneys, spouse, or accountant, or unless otherwise required by court order. Plaintiff agrees she will not contact any current or former Physicians Group Services employees regarding this claim or the terms of the settlement. Any disclosure made

5

by the Court does not alleviate the parties of their respective obligations under this paragraph.

Doc. 30-1 ¶ 9. The agreement includes a provision explaining, "Each party acknowledges and agrees that each has had sufficient time to review this Agreement, that each has conferred with counsel regarding this Agreement[,] and that each has received all information he/she/it requires from the other in order to knowingly execute this Agreement." Doc. 30-1 ¶ 16.

**Law**

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages (for up to two years or, if the employer had intentionally violated the law, up to three years, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorneys' fees and costs. 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food,* placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). They must present their settlement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–07. That requirement applies whether the plaintiff is a current or former employee. *Id.* If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's Food,* 679 F.2d at 1354.

A court should presume that a settlement is fair and reasonable, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), and then consider: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel, *Leverso v. SouthTrust Bank of Ala. Nat'l Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

"When [a] jury finds an employer has violated the overtime provision of the FLSA and assesses compensatory damages, the district court generally must add an award of liquidated damages in the same amount" unless it exercises its discretion to reduce or deny such damages after the employer has shown to the court's satisfaction "that the act or omission giving rise to [the] action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) (internal quotation marks omitted). "[A] plaintiff cannot waive [his] right to liquidated damages in a FLSA settlement when there is no genuine dispute about whether [he] is entitled to them." *Nall*, 723 F.3d at 1307 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)); *see Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1279, 1287 (N.D. Ala. 2014) (approving FLSA settlement expressly excluding liquidated damages based on parties' genuine dispute on entitlement to them).

If an agreement to settle a FLSA overtime claim includes a confidentiality provision, many judges will strike the provision because it contravenes the FLSA's purpose and undermines the Department of Labor's efforts to inform employees of their rights. *See, e.g., Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242–43 (M.D. Fla. 2010); *see also Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14-cv-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Oct. 24, 2014) (unpublished). The concerns are lessened if the parties publicly file the agreement. *Crabtree v. Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *5 (S.D. Ala. Feb. 14, 2013) (unpublished); *cf. Lee v.*

7

*Guyoungtech USA, Inc.*, No. 16-0334-KD-B, 2017 WL 1097201, at *5 (S.D. Ala. Mar. 23, 2017) (unpublished) (stating a confidentiality provision in a publicly filed agreement is "effectively a nullity" and "unenforceable"); *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (unpublished) ("[C]onfidentiality provisions are, at least in part, unenforceable due to the public filing of the agreements."). Approval may be warranted if separate consideration supports the provision. *See, e.g.*, *Lowery v. Auto Club Grp., Inc.*, No. 6:17-cv-359-Orl-40GJK, 2017 WL 3336464, at *3–4 (M.D. Fla. Aug. 3, 2017) (unpublished); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *3–4 (M.D. Fla. Nov. 4, 2014) (unpublished); *Caamal v. Shelter Mortg. Co., LLC*, No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (unpublished).

A court may approve a settlement without separately considering the reasonableness of an agreed amount of attorney's fees if the parties negotiated them without regard to the amount to the plaintiff. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *accord Miller v. Enhanced Recovery Co., LLC*, No. 3:15-cv-1203-J-32PDB, Doc. 50 (M.D. Fla. Dec. 2, 2016), *report & recommendation adopted*, Doc. 51 (M.D. Fla. Dec. 19, 2016) (Corrigan, J.); *Phipps v. W.W. Contractors, Inc.*, No. 3:12-cv-299-J-32JRK, 2015 WL 5897705, at *4 (M.D. Fla. Oct. 7, 2015) (Corrigan, J.) (unpublished).

If a case filed as a FLSA collective action is settled *after* conditional certification of a collective action, the court must decide whether final certification is appropriate before approving a settlement. *Hosier v. Mattress Firm, Inc.*, No. 3:10-cv-294-J-32JRK, 2012 WL 2813960, at *2–3 (M.D. Fla. Jun. 8, 2012), *report & recommendation adopted*, 2012 WL 2838610 (M.D. Fla. Jul. 10, 2012) (Corrigan, J.) (unpublished).

## Analysis

Accepting the parties' representations, the settlement is a fair and reasonable resolution of a bona fide dispute.

On the first factor (existence of collusion), there is no evidence of collusion. The parties were represented by counsel with "extensive experience" in litigating FLSA actions and conferred with counsel in deciding whether to settle. Doc. 28 at 6; Doc. 30-1 ¶ 16. The settlement is the product of arm's-length bargaining. Doc. 28 at 6–7. The parties voluntarily accepted the terms. Doc. 28 at 12.

On the second factor (the complexity, expense, and likely duration of the case), absent settlement approval, the action could be complex given the length of Valentine's employment, her attempt to make this a collective action, and the issue of whether she had been exempt from FLSA overtime requirements. The action could last for at least several more months and include cross motions for summary judgment and a trial—in the parties' words, "costly and protracted … litigation." Doc. 28 at 8; *see* Doc. 13 at 1–2 (case management and scheduling order showing trial scheduled for trial term five months after parties' notice of settlement). They opine the settlement is in their best interest to avoid the uncertainty and distraction of further litigation. Doc. 28 at 2.

On the third factor (the stage of the proceedings and discovery completed), the parties settled after "nearly eleven months of investigation" and formal and informal discovery, including document production and depositions. Doc. 28 at 3, 8–9; *see* Doc. 1 (complaint filed April 6, 2016); Doc. 26 (notice of settlement filed March 2, 2017). They "had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion." Doc. 28 at 9.

On the fourth factor (the probability of the plaintiff's success on the merits), the parties agree four bona fide issues exist (stated above). Doc. 28 at 3. They agree Valentine "would face significant obstacles and risk an unsuccessful outcome if this

9

case were to proceed to trial." Doc. 28 at 9. Her counsel believes the settlement "substantially benefit[s]" her, "especially when weighed against the uncertain outcome and risk" of litigation. Doc. 28 at 7.

On the fifth factor (the range of possible recovery), Valentine could recover nothing if unsuccessful or $30,000 if fully successful, excluding attorney's fees and costs. Doc. 28 at 9–10. The parties agree she was "ineligible for overtime compensation" during many weeks she worked. Doc. 28 at 10 n.1. The settlement does not include liquidated damages, and it need not because there is a genuine dispute over whether she would receive them if she proceeded. *See Briggins*, 3 F. Supp. 3d at 1287.

On the sixth factor (the opinions of counsel), Valentine's counsel represents her belief the settlement is fair and reasonable, Doc. 28 at 7, and the joint filing indicates counsel on both sides believe the settlement is fair and reasonable.

That the agreement contains a confidentiality provision does not render it unfair. It is unclear whether the confidentiality provision would be enforceable. *See Lee*, 2017 WL 1097201, at *5. In any event, the parties represent $500 of the $5773 to Valentine is included as separate consideration for her agreement to not spread the word about the existence or terms of the settlement. Doc. 30 at 2–3; Doc. 30-1 ¶ 2. The public filing of all documents in this action, including the settlement agreement, lessens the concern the provision will contravene the FLSA's purpose and undermine the Department of Labor's efforts to inform employees of their rights. Preventing only her from discussing the existence or terms of the settlement in exchange for $500 does not appear to hinder the purpose and efforts in a way that should deprive the parties of the benefits they obtained through arm's-length renegotiations. Although the total amount to her did not change between agreements—it was just reallocated—the amount to her designated as back wages appears to remain fair.

Because Valentine has not moved for conditional certification of a collective action, it appears no special consideration is required for a fairness review under *Lynn's Food*. This Court has previously approved individual FLSA settlements without special analysis where the Court had not yet granted conditional certification. *See Serino v. Enhanced Recovery Co., LLC*, No. 3:15-cv-1418-J-25PDB, Doc. 28 (M.D. Fla. Feb. 9, 2017), *report & recommendation adopted*, Doc. 29 (M.D. Fla. Mar. 1, 2017); *Murphy v. Enhanced Recovery Co., LLC*, No. 3:14-cv-94-J-39MCR, Doc. 63 (M.D. Fla. Dec. 1, 2014), *report & recommendation adopted*, Doc. 65 (M.D. Fla. Dec. 3, 2014).

On attorney's fees and costs, given the parties' representation they agreed on the attorney's fees and costs separately, without regard to the amount to the plaintiffs, Doc. 28 at 10, the Court need not undertake a lodestar review. *See Bonetti, 715 F. Supp. 2d at 1228*. Moreover, $3977 in fees and costs appears reasonable given the length of and activity in the action and counsel's representation that she reduced her billed hours by more than 80 percent in agreeing to the settlement amount. Doc. 28 at 11. The parties agree the amount is fair and reasonable. *See* Doc. 28 at 10.

A finding the settlement is a fair and reasonable resolution of a bona fide dispute and approval of the settlement agreement are warranted.

# Recommendation[2]

I recommend:

1. **granting** the parties' motion for approval of the settlement, Doc. 28, as supplemented, Doc. 30, and finding the settlement, Doc. 30-1, as amended, is a fair and reasonable resolution of a bona fide dispute;

2. **dismissing** the case with prejudice; and

3. **directing** the Clerk of Court to close the case.

**Entered** in Jacksonville, Florida, on August 23, 2017.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: The Honorable Timothy J. Corrigan
Counsel of record

---

[2]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.